NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHELLE S. KIRMSER,

          Plaintiff,

v.

UNITY BANCORP, INC., *et al.*,

          Defendants.

Civil Action No. 24-10663 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon Defendants Unity Bancorp., Inc. ("UBI"), Unity Bank ("Unity"), and Unity Bank Board of Directors' (the "Board") (collectively, "Defendants") Motion to Dismiss (ECF No. 7) Plaintiff Michelle S. Kirmser's ("Plaintiff") Complaint (ECF No. 1). Plaintiff opposed (ECF No. 9), and Defendants replied (ECF No. 12). The Court has carefully considered the parties' submissions and decides the motion without oral argument under Local Civil Rule 78.1(b). For the reasons stated below, the Motion to Dismiss is granted.

**I.    BACKGROUND**

    **A.    Factual Background[1]**

    Plaintiff is an individual from Warren, New Jersey, who was employed by Unity, a New Jersey-chartered bank, from December 2006 through September 2023. (Compl. 1, ¶¶ 1, 5, ECF

---

[1] In considering the instant Motion to Dismiss, this Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

No. 1.) The Board is the Administrator of an Executive Life Insurance Plan with Split Dollar Policy Endorsement (the "Plan") that Unity offered to its employees, including Plaintiff. (*Id.* ¶¶ 1, 7.) UBI is a publicly traded financial services organization that was "organized at the direction of the Board . . . for the purpose of acquiring all the capital stock of [Unity], and it serves as a holding company for [Unity]." (*Id.* ¶ 6.)

### 1.     *The Plan*

In 2010, as an employee of Unity, Plaintiff elected to participate in the Plan. (*Id.* ¶¶ 24-25; *see generally* Ex. A to Compl. (the "Plan"), ECF No. 1; Ex. C. to Compl., ECF No. 1.) Under the Plan, participants have a right to designate a beneficiary for certain death benefits, including certain benefits for "those Participants who are Executive Vice Presidents and above" and a different set of death benefits for "[a]ll other Participants[.]" (Compl. ¶¶ 13-14 (first alteration in original) (quoting Plan § 3.1).) In a July 1, 2013, amendment to the Plan, the "maximum benefit" for certain participants, including Plaintiff, was amended to $250,000. (Compl. ¶¶ 15-16 (citing Ex. B to Compl., ECF No. 1).)

Under § 2.2 of the Plan, "[a] Participant's rights under this Plan shall cease and his or her participation in this Plan shall terminate" if any of the following occurs:

> (a) [i]f the Participant is Terminated for Cause[2]; (b) [i]f the Participant's employment with [Unity] is terminated prior to [her] Early Retirement Age[3] for reasons other than Disability . . . ; or (c)

---

[2] "Terminated for Cause" is defined by the Plan to mean "termination because of the [e]mployee's personal dishonesty, incompetence, willful misconduct, breach of fiduciary duty involving personal profit, intentional failure to perform stated duties, willful violation of any law, rule or regulation (other than traffic violations or similar infractions) or a final cease-and-desist order." (Plan 2.)

[3] "Early Retirement Age" is defined by the Plan to mean "the Participant has attained an age such that the sum of the Participant's age and Years of Service (rounded up to the next full year) at termination totals at least [sixty-five]." (Plan 2.)

> [i]f the Participant terminates employment due to Disability and thereafter becomes gainfully employed with an entity other than [Unity].

(Compl. ¶ 18 (quoting Plan § 2.2).) The Plan also provides that Unity shall maintain the policy and "in no event, shall [Unity] amend, terminate or otherwise abrogate the Participant's interest in the Policy, unless the Participant agrees[,] . . . [i]f the Participant's employment with [Unity] is terminated due to Disability, . . . [or] [i]f the Participant's employment with [Unity] is terminated on or after Early Retirement Age." (Plan § 2.3; Compl. ¶ 19.) At the time her employment with Unity terminated in 2023, Plaintiff was fifty-nine years old and had more than sixteen years of service with Unity. (Compl. ¶ 22.) Plaintiff alleges she became "disabled" in March 2023, and, therefore, "her employment was terminated after Early Retirement Age due to Disability[.]" (*Id.* ¶ 23.) Plaintiff further alleges that her termination of employment with Unity was not "for cause." (*Id.* ¶ 20.)

### 2. LTD Benefits

While employed by Unity, Plaintiff also paid for Executive Long-Term Disability Insurance[4] (the "EX LTD Plan") through payroll deductions made by Unity. (*Id.* ¶ 28.) Unity instructed Plaintiff that her premiums "were being paid in such a manner that she would not be taxed on the benefits she received in the event that she ever needed to utilize the EX LTD [Benefits]." (*Id.*) Plaintiff relied on "[Unity's] statements that her EX LTD [B]enefits would not be taxable, and[,] therefore[,] she refrained from purchasing additional long-term disability insurance outside of work." (*Id.* ¶ 30.)

In 2024, after Plaintiff became disabled and began receiving EX LTD Benefits, she learned that the income was being reported as taxable. (*Id.* ¶¶ 3, 31.) Thereafter, Plaintiff asked Unity to

---

[4] Any benefits conferred on Plaintiff under the EX LTD Plan are collectively referred to herein as the "EX LTD Benefits."

3

correct its reporting of her EX LTD Benefits as non-taxable, "on the grounds that [P]laintiff had paid the premiums for her EX LTD insurance with after-tax dollars and that agents of [Unity] had told her that any EX LTD [B]enefits she received would not be subject to taxation." (*Id.* ¶ 32.) Plaintiff alleges that Unity refused to correct its reporting of Plaintiff's income resulting from the EX LTD Benefits and has "further refused to provide any documentation showing on what basis it reported [P]laintiff's EX LTD [B]enefits as taxable." (*Id.* ¶¶ 33-34.)

      **B.**      **Procedural History**

In November 2024, Plaintiff filed the Complaint, alleging five causes of action: (1) declaratory judgment seeking clarification of the status as a participant in, and right to benefits under, the Plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") ("Count One"); (2) breach of contract ("Count Two"); (3) breach of the covenant of good faith and fair dealing ("Count Three"); (4) promissory estoppel ("Count Four"); and (5) misrepresentation ("Count Five"). (*See generally id.*) On February 24, 2025, Defendants filed the subject Motion to Dismiss. (*See generally* Mot. to Dismiss, ECF No. 7.) Plaintiff opposed (*see generally* Pl.'s Opp'n Br., ECF No. 9), and Defendants replied (*see generally* Defs.' Reply Br., ECF No. 12).

**II.**      <u>**LEGAL STANDARD**</u>

Federal Rule of Civil Procedure[5] 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[5] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III.  DISCUSSION

Defendants move to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6), arguing that: (1) UBI is not a proper party and should therefore be dismissed; (2) Count One fails as a matter of law; and (3) Counts Two through Five are preempted by ERISA. (*See generally* Defs.' Moving Br., ECF No. 7-1.) The Court addresses each argument in turn.

A. **Dismissal of UBI**

Defendants first argue that UBI is not a proper party to this case because it "is not the sponsor or fiduciary of any ERISA plan, nor is it the policyholder of any applicable insurance policy." (*Id.* at 1, 11.)

Under 29 U.S.C. § 1132(a)(1)(B), a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). "In a claim for wrongful denial of benefits under ERISA, the proper defendant is the plan itself or a person who controls the administration of benefits under the plan." *Evans v. Emp. Benefit Plan, Camp Dresser & McKee, Inc.*, 311 F. App'x 556, 558 (3d Cir. 2009) (citing 29 U.S.C. § 1132(a)(1)(B)); *see also Rajpurohit v. Becton, Dickinson, & Co.*, No. 22-7612, 2024 WL 1477652, at *9 (D.N.J. Apr. 5, 2024) ("In such lawsuits [brought under § 1132(a)(1)(B)] . . . the proper defendants are the plan or plan administrators." (citing *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007))). In evaluating whether an entity "controls the administration of benefits under the plan[,]" courts may consider factors such as whether: (1) communications about benefits were directed to the entity; (2) the entity was responsible for administering the benefits; and (3) the entity determined benefit eligibility. *See Evans*, 311 F. App'x at 558-59.

Here, Plaintiff merely alleges that UBI is a "holding company" that was "organized at the direction of the Board . . . for the purpose of acquiring all the capital stock of [Unity.]" (Compl. ¶ 6.) Plaintiff does not allege any other facts about UBI or its role in controlling the Plan or its administration. (*See generally id.*) As Defendants also observe, UBI "is not named in the Plan

6

Document as a sponsor, fiduciary, or administrator[.]"[6] (Defs.' Moving Br. 3; *see generally* Plan.) Without more from Plaintiff regarding UBI's role and connection to the Plan, UBI cannot be deemed a proper defendant to this action at this time.[7] UBI is, accordingly, dismissed.[8]

### B.      Declaratory Judgment Claim (Count One)

Plaintiff seeks a declaratory judgment that Plaintiff is a participant in the Plan and, therefore, "that her beneficiaries are entitled to benefits[.]" (Compl. ¶ 36.A.) In support of Count One, Plaintiff alleges that she is an ongoing participant in the Plan "because she satisfies the requirements under two separate sections of the Plan": (1) under § 2.3(a), "her employment terminated due to disability and she has not become employed by another entity"; and (2) under § 2.3(b), "her employment terminated after she reached Early Retirement Age, and she was not terminated for cause[.]" (*Id.* ¶ 35.) Plaintiff further alleges that a judicial declaration "is necessary and appropriate at this time so that the parties may ascertain their rights and obligations under the Plan and settle the dispute prior to the expiration of any purported limitations period . . . , and to ensure that the [policy] remains in effect to cover any claims by [P]laintiff's beneficiaries." (*Id.*

---

[6] The Court may consider the Plan in its analysis because it is attached to the Complaint and is integral to Plaintiff's claims in the Complaint. *See Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (noting that on a Rule 12(b)(6) motion, the Court may "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents" (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010))).

[7] The Court also notes that Plaintiff's opposition contained only a one-footnote response to Defendants' argument on this point and did not otherwise fulsomely address this issue. (*See* Pl.'s Opp'n Br. 19 n.8.) "[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (citing *Commonwealth of Pa. v. HHS*, 101 F.3d 939, 945 (3d Cir. 1996)).

[8] Given UBI's dismissal from the case, references to "Defendants" hereinafter refer to Unity and the Board.

¶ 36.) Defendants move to dismiss Count One on the basis that Plaintiff's declaratory judgment claim fails as a matter of law by the Plan's terms. (Defs.' Moving Br. 17-20.)

The Court, however, must dismiss this claim *sua sponte* for lack of subject matter jurisdiction. The Declaratory Judgment Act (the "DJA") permits this Court to issue a declaratory judgment "[i]n a case of actual controversy." 28 U.S.C. § 2201(a). The DJA does not create an independent cause of action, but rather "is a procedural vehicle that creates a form of relief" and serves as a "remedy for existing cases or controversies." *In re AZEK Bldg. Prods., Inc., Mktg. & Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 624-25 (D.N.J. 2015) (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937)). As a form of forward-looking relief, a plaintiff seeking declaratory relief must demonstrate, among other things, a threat of "real and immediate" future harm. *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995). Without a threat of real and immediate future harm, a plaintiff does not have standing. *See Falcone v. Dickstein*, 92 F.4th 193, 204-05 (3d Cir. 2024) ("Without showing a likelihood or immediate threat of future harm, a plaintiff cannot obtain standing for prospective relief." (citing *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987))).

Here, Plaintiff does not sufficiently allege a real or immediate threat of future harm. (*See generally* Compl.) Plaintiff alleges that she "has not made a claim for the life insurance benefits under the [Plan] because such a claim may be made only by her designated beneficiaries upon her death." (*Id.* ¶ 27.) Rather, Plaintiff seeks a declaration that "her beneficiaries [would be] entitled to benefits because [Plaintiff] is an insured" under the Plan. (*Id.* ¶ 36.A.) While Plaintiff alleges a theoretical future harm—that her beneficiaries would not recover any money upon a claim made after her death—Plaintiff has not otherwise alleged that she or her beneficiaries face an immediate threat of this occurring absent a declaration from this Court or that any purported limitations period

is set to expire. (*See id.* ¶ 36); *Obusek*, 72 F.3d at 1154. The allegations in Plaintiff's Complaint are insufficient to establish that Plaintiff has standing to bring such a claim at this time. *See Krauter v. Siemens Corp.*, 725 F. App'x 102, 108 (3d Cir. 2018) (affirming district court's dismissal where plaintiff did not have standing to bring a declaratory judgment action because "precedent is conclusive: a risk of future adverse effects on benefits is not an injury in fact"); *see also Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Loc. Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009) ("[The Third Circuit has] held that a potential harm that is 'contingent' on a future event occurring will likely not satisfy this prong of the ripeness test." (citations omitted)).

The Court will, accordingly, dismiss Count One, but will give Plaintiff an opportunity to amend her Complaint to bolster allegations related to the threat of imminent harm she may face. *See, e.g., In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 790 (D.N.J. 2025) ("When a plaintiff fails to establish Article III standing, the court lacks subject matter jurisdiction, and dismissal is required[.]" (citations omitted)); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) ("[The Court] can dismiss a suit *sua sponte* for lack of subject matter jurisdiction at any stage in the proceeding."); *Keith v. McCarthy*, No. 25-02973, 2025 WL 3296813, at *6 (D.N.J. Nov. 26, 2025) (dismissing complaint for lack of standing to pursue declaratory relief where future harm was speculative).

### C.     State Law Claims (Counts Two through Five)

Plaintiff asserts state law claims in Counts Two through Five, all of which relate to the EX LTD Plan. (*See* Compl. ¶¶ 37-50.) Defendants argue that Counts Two through Five should be

dismissed because they are subject to express preemption under § 514(a) of ERISA.[9] (*See* Defs.' Moving Br. 2, 12-17.) The Court agrees.

The stated goal of ERISA is "'to promote the interests of employees and their beneficiaries in employee benefit plans' by ensuring benefit plans [are] well managed and [will] not leave plan participants short-changed." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 225 (3d Cir. 2020) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)). To ensure "that ERISA's mandates supplanted the patchwork of state law previously in place . . . Congress enacted [S]ection 514(a)—a broad express preemption provision, which 'supersede[s] any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Id.* at 226 (second alteration in original) (quoting 29 U.S.C. § 1144(a)). The reach of ERISA's express preemption provision applies not only to state statutes and regulations which "relate to" an ERISA-governed employee benefit plan, but also to state "common law causes of action."[10] *Id.* (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014)).

---

[9] ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce." 29 U.S.C. § 1003(a)(1). Here, the EX LTD Plan, which provides long term disability benefits, is an "employee welfare benefit plan" as defined by ERISA. *See* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness, accident, disability, death or unemployment").

[10] Courts have found state law claims such as breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, and misrepresentation to be preempted by ERISA where the claims have some connection with or reference to an employee benefit plan. *See, e.g.*, *Ford v. Unum Life Ins. Co. of Am.*, 351 F. App'x 703, 706 (3d Cir. 2009) (stating a breach of contract claim "fall[s] within the scope of ERISA preemption, if the claim[] relate[s] to an ERISA-governed benefits plan"); *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589, 596 (D.N.J. 1996) (finding that misrepresentation and breach of implied covenant of good faith and fair dealing claims related to a plan governed by ERISA and were therefore preempted); *Labus v. Navistar Int'l Transp. Corp.*, 740 F. Supp. 1053, 1065 (D.N.J. 1990) (finding promissory estoppel claim preempted by ERISA because the "claim relates to an employee benefit plan").

For purposes of express preemption, "a state law 'relates to' an employee benefit plan if it has either (1) a 'reference to' or (2) a 'connection with' that plan[.]" *Plastic Surgery Ctr.*, 967 F.3d at 226 (quoting *Shaw*, 463 U.S. at 96-97). Claims that make "reference to" an ERISA plan include both claims that "'act[] immediately and exclusively upon ERISA plans'" and those that are "'premised on'" a plan. *Id.* at 230 (alternation in original) (first quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016); and then quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)). Claims have a "connection with" an ERISA plan if they: "[(1)] 'directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries'[; (2)] interfere with plan administration[;] or [(3)] undercut ERISA's stated purpose[.]" *Id.* at 235 (internal citations omitted).

Here, Plaintiff, an ERISA participant, brings state law claims regarding her entitlement to EX LTD Benefits on a non-taxable basis, alleging that: (1) Unity's statements that Plaintiff's EX LTD Benefits would not be subject to federal income tax "constituted an enforceable contract" and Unity breached that contract "resulting in [P]laintiff having federal taxes withheld from her EX LTD [B]enefits" (Count Two) (Compl. ¶¶ 38-40); (2) Unity's purported breach of contract also constitutes breach of the implied covenant of good faith and fair dealing (Count Three) (*id.* ¶¶ 42-43); (3) Unity is liable under the doctrine of promissory estoppel because "Plaintiff reasonably relied to her detriment upon [Unity's] promises that she would receive EX LTD [B]enefits on an after-tax basis" under the EX LTD Plan (Count Four) (*id.* ¶¶ 45-46); and (4) Unity is liable for misrepresentation because Plaintiff performed services for Unity based on Unity's representations that her EX LTD Benefits would not be taxable when they were paid to her (Count Five) (*id.* ¶¶ 48-51). Despite the Complaint's allegations, Plaintiff argues that the state law claims "do not seek benefits under any ERISA plan," but rather "ask only that the Court require [Unity]

to make good on various representations that were made to [P]laintiff . . . [regarding her payment of] premiums for her long-term disability insurance in such a manner that she would not be taxed on the benefits were she ever to receive those benefits." (Pl.'s Opp'n Br. 14.)

These state law claims, however, clearly require an analysis of the EX LTD Plan itself, and its administration, to discern the responsibility for paying premiums for coverage, and thus, whether Plaintiff should be taxed on the EX LTD Benefits as she receives them. (*See* Defs.' Moving Br. 14-17.) The Court, therefore, finds that Counts Two through Five are preempted by ERISA because they are premised upon and interfere with the administration of the EX LTD Plan. *See Plastic Surgery Ctr.*, 967 F.3d 218 at 235, 240; *see also Turner v. CIGNA Grp. Ins.*, No. 10-4103, 2011 WL 2038751, at *4-5 (D.N.J. May 24, 2011) (finding plaintiff's state law claims were preempted by ERISA because they required the court to determine what was covered under the terms of the plan and, therefore, the plan was "'a critical factor in establishing liability' for [p]laintiff's misrepresentation claim[,]" as well as plaintiff's breach of contract and breach of implied covenant of good faith and fair dealing claims); *O'Rourke v. Farmers Grp. Inc. Transitional Supplemental Exec. Ret. Plan*, No. 17-279, 2017 WL 10354733, at *3 (C.D. Cal. Aug. 24, 2017) (finding negligent misrepresentation claims related to statements about plaintiff's pension were preempted by ERISA because the allegations "'relate to' [plaintiff's] employee benefit and are thus preempted").

Counts Two through Five are, accordingly, dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted. The Court will issue an Order consistent with this Memorandum Opinion.

                                                                                                          _/s/ Michael A. Shipp_
                                                                                                          **MICHAEL A. SHIPP**
                                                                                                          **UNITED STATES DISTRICT JUDGE**

Dated:  2/2/2026